THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

[Cite as *State v. Davis,* 136 Ohio St.3d 26, 2013-Ohio-1748.]

*Appeal dismissed as having been improvidently accepted.*

(No. 2012-0830—Submitted March 12, 2013—Decided May 2, 2013.)

APPEAL from the Court of Appeals for Summit County,

No. 25826, 2012-Ohio-1440.

_____

{¶ 1} The cause is dismissed as having been improvidently accepted.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

LANZINGER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting.**

{¶ 2} I must dissent from the majority's decision to dismiss this appeal as having been improvidently accepted. This case involves unresolved issues touching on lesser offenses and the right to a trial by jury, and it therefore presents important constitutional questions and issues of public and great general interest.

{¶ 3} This case is a classic example of voluntary manslaughter. To hold otherwise, as the court of appeals did, ignores the facts presented at trial. During a brawl that was instigated primarily by the victim, the victim pushed appellant Tyran Davis's pregnant sister to the ground and then punched another of Davis's sisters. Although Davis was not at the scene at that time, a witness informed Davis that the victim had punched and pushed Davis's sisters. After Davis arrived at the scene, the victim took off his shirt and told Davis that they had to fight. A more definitive demonstration of provocation is hard to imagine. Davis refused the invitation to fight and began to walk away. The victim then ran across

the street and punched Davis's pregnant girlfriend with enough force to knock her down and stun her, and possibly knock her unconscious. It is unclear how much Davis knew about the particulars of the assaults on his loved ones; however, it is abundantly clear that one of the final pieces of information was one of Davis's sisters telling him, "[H]e just hit your baby's mama." In a matter of seconds, the fight was on, and Davis crossed the street toward the victim, shooting as he walked or ran. It is uncontroverted that the fight ended when he shot the victim ten times. Davis was approximately five feet away from the victim when he started shooting.

{¶ 4} Defense counsel submitted proposed jury instructions that requested a voluntary-manslaughter instruction under both the murder and the felony-murder charges. As a condition for presenting evidence by the defense, counsel asked the court to provide a voluntary-manslaughter instruction to the jury. After the trial court stated that it would not provide a voluntary-manslaughter instruction, counsel proffered Davis's testimony in order to establish the necessity of the instruction. The defense proffered that Davis would have testified that he witnessed the victim run over to Davis's girlfriend and punch her, that he was blinded by anger, and that he lost control of himself when he shot the victim. The trial court again refused to provide counsel's requested voluntary-manslaughter instruction, and the charges of murder and felony murder went to the jury. Davis did not testify.

{¶ 5} The jury acquitted Davis on the charge of murder but found him guilty of felony murder and felonious assault. After merging these convictions, the trial court imposed a sentence of 15 years to life for felony murder and a consecutive sentence of 3 years for a firearm specification, for a total of 18 years to life. Had Davis been convicted of voluntary manslaughter, he would have faced a sentence of 3 to 10 years for the conviction under the criminal statutory

provisions in effect at that time, and an additional 3-year sentence for the specification, for a total of 6 to 13 years.

{¶ 6} On appeal, the parties' arguments regarding voluntary manslaughter addressed only whether there had been adequate evidence of reasonably sufficient provocation to warrant an instruction to the jury on voluntary manslaughter. However, the Ninth District Court of Appeals decided the question on an issue that was not briefed by the parties: whether the failure to provide a voluntary-manslaughter instruction was harmless error. The appellate court concluded that because the jury had acquitted Davis of murder, the failure was indeed harmless. For the reasons that follow, I disagree.

{¶ 7} We accepted Davis's appeal to determine the propriety of the court's failure to provide a lesser-degree-offense instruction, given that the defendant was on trial for a single homicide, but on two distinctly different murder theories. 132 Ohio St.3d 1461, 2012-Ohio-3054, 969 N.E.2d 1230. The majority's decision to dismiss this appeal as having been improvidently accepted implies that this case does not require any clarification of the law surrounding lesser offenses, because that law is already settled and because the appellate court applied that law correctly. Given that we are still struggling with the parameters of lesser offenses, as demonstrated in *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, the law on this subject is far from settled. And also importantly, the appellate court's decision is clearly erroneous.

{¶ 8} To start with, it is clear that the evidence, when viewed in a light most favorable to Davis, required an instruction for voluntary manslaughter. Voluntary manslaughter is a lesser-degree offense of murder because the elements of voluntary manslaughter are contained in the indicted offense of murder, except for one or more mitigating elements. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). Voluntary manslaughter consists of knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of

rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A). The offense of murder consists of purposefully causing the death of another. R.C. 2903.02(A).

{¶ 9} In order to warrant an instruction for voluntary manslaughter as a lesser-degree offense of murder, the trial court must determine whether there was "evidence of reasonably sufficient provocation." *Shane* at paragraph one of the syllabus. If, under any reasonable view of the evidence, it would be possible for the jury to find a defendant not guilty of the greater offense but guilty of the lesser-degree offense, the trial court is *required* to provide an instruction on the lesser-degree offense. *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980); *State v. Nolton*, 19 Ohio St.2d 133, 135, 249 N.E.2d 797 (1969); *State v. Campbell*, 69 Ohio St.3d 38, 47, 630 N.E.2d 339 (1994). It is not discretionary. Due process makes it a requirement. It cannot be stressed strongly enough that the evidence on this point must be considered in a light most favorable to the defendant, *Campbell* at 47-48, citing *Wilkins* at 388, and that the persuasiveness of the evidence regarding the lesser-degree offense is irrelevant, *Wilkins* at 388. To allow a trial court to *weigh* the evidence on its own would deprive a defendant of his constitutional right to a trial by jury. *United States v. Gaudin*, 515 U.S. 506, 510-511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

{¶ 10} We have previously acknowledged that there are certain classic scenarios that call for a voluntary-manslaughter instruction:

> There are certain types of situations that have been regarded as particularly appropriate cases in which voluntary manslaughter instructions are often given when murder charges are brought. For example, assault and battery, mutual combat, illegal

> arrest and discovering a spouse in the act of adultery are some of the classic voluntary manslaughter situations.

*Shane*, 63 Ohio St.3d at 635, 590 N.E.2d 272. Certainly if seeing one's wife having consensual sex with a man is sufficient provocation to allow consideration of voluntary manslaughter, then seeing the mother of one's child getting punched and knocked unconscious by a man is also sufficient. If voluntary manslaughter cannot be applied in this case, then there is no reason for it to exist.

{¶ 11} It therefore goes without saying that the question of voluntary manslaughter should have reached the jury. Even if there was conflicting testimony, and even if there were inferences that could have been drawn against the defendant, it was for the jury to decide whom to believe, and it was for the jury to decide what inferences to draw from the evidence. *State v. Loudermill*, 2 Ohio St.2d 79, 82-83, 206 N.E.2d 198 (1965). The trial court compounded the problem by not giving the jury all the tools that it needed in order to do its job. Contrary to the appellate court's holding, the error most certainly was not harmless. An error is harmless only if it does not affect substantial rights and is not prejudicial to the defendant. Crim.R. 52(A). In order to dismiss an error as harmless, the error must be harmless beyond a reasonable doubt. *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987). An error is harmless beyond a reasonable doubt only if there is no reasonable possibility that the error affected the defendant's conviction. *Id.* at 195; *State v. Allen*, 73 Ohio St.3d 626, 630, 653 N.E.2d 675 (1995). The defendant was sentenced to 18 years to life for felony murder and the accompanying firearm specification. The jury was never given the opportunity to weigh the facts and determine whether in fact this was a case of voluntary manslaughter, which would have resulted in a maximum sentence of 13 years. The trial court simply did not provide the jury with the right tools to do its job.

**{¶ 12}** This court has decisively held that the failure to provide a warranted lesser-offense instruction to the jury is prejudicial to the rights of the defendant. *Loudermill* at syllabus. Granted, had Davis been acquitted of murder, and had there been no other alternative murder charge, and had there remained only offenses of lower degrees with lesser penalties, then Davis would not have been prejudiced by being denied the opportunity to be convicted of voluntary manslaughter. But that is not what happened here. Instead, the appellate court erroneously allowed a felony-murder conviction to stand, while in the same breath claiming a lack of prejudice due to the absence of a murder conviction.

**{¶ 13}** The appellate court incorrectly held that the failure to provide an instruction for voluntary manslaughter was harmless error because of the acquittal on the murder charge. By being denied its role as trier of fact on the issue of voluntary manslaughter, the jury was forced to make a false choice between the two theories of murder and felony murder. When looking at errors in jury instructions, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), at paragraph four of the syllabus, following *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Cupp* at 147. Accordingly, if there was any possibility that the jury's decision was affected by the trial court's error, then Davis was prejudiced by the error. Because the jury could readily have convicted Davis of voluntary manslaughter and acquitted him of both murder and felony murder, Davis was prejudiced by the felony-murder conviction, and the error was not harmless. The appellate court did not erase the prejudice by playing a word game with the different homicide theories.

**{¶ 14}** Further, the practical reality of Davis's sentence makes it clear that the trial court's error was prejudicial. Voluntary manslaughter is a first-degree felony, which carries a definite prison sentence of three to ten years. R.C. 2903.03(B) and former R.C. 2929.14(A)(1). However, both murder and felony murder are special felonies, which at a minimum carry indefinite prison terms of 15 years to life. R.C. 2903.02(C) and 2929.02(B)(1). Thus the consequence of being denied a voluntary-manslaughter instruction is the prejudice of being subjected to a substantially longer prison sentence.

**{¶ 15}** Finally, this court's willingness to instill some sanity into the lesser-offenses doctrine when requested by the state in *Deanda* coupled with its unwillingness to do so here when requested by the defendant calls for concern. Justice Sweeney voiced similar concern in his dissenting opinion in *State v. Kidder*, 32 Ohio St.3d 279, 288, 513 N.E.2d 311 (1987) (Sweeney, J., dissenting): "I am disturbed that the holding today leaves the impression on bench, bar and the general public that the rule [of lesser offenses] varies with the outcome of the case."

**{¶ 16}** Rather than dismissing this appeal as having been improvidently accepted, after the parties have fully briefed the issues and presented their oral arguments before this court, we should instead make the effort to untangle this case and clarify the law on these fundamental issues. I therefore dissent from the majority's decision to dismiss this appeal as having been improvidently accepted. I would take the opportunity to clarify Ohio law regarding the state of lesser included and lesser-degree offenses in light of *Deanda* and regarding a defendant's right to have sufficiently proven lesser-degree offenses considered by the finder of fact rather than the judge.

**{¶ 17}** Because the appellate court came to erroneous conclusions on all of the foregoing issues, I would reverse the judgment of the Ninth District Court of Appeals and hold that the jury should have been provided a voluntary-

manslaughter instruction and that the murder acquittal did not render the error harmless when Davis was alternatively charged with felony murder.

LANZINGER, J., concurs in the foregoing opinion.

_____

Sheri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Public Defender, for appellant.

_____