[Cite as *State v. Amison*, 2021-Ohio-1537.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-08-093 |
| Appellee, | : | O P I N I O N<br>5/3/2021 |
|  | : |  |
| - vs - | : |  |
|  | : |  |
| MEZAHN AMISON, | : |  |
| Appellant. | : |  |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-12-1982

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**M. POWELL, P.J.**

{¶ 1} Mezahn Amison appeals from his convictions in the Butler County Common Pleas Court for murder and felonious assault. For the reasons that follow, this court affirms Amison's convictions.

{¶ 2} In December 2019, a Butler County grand jury indicted Amison for one count of murder and two counts of felonious assault. The indictments stemmed from allegations

that Amison shot and killed Zachariah Wallace on December 6, 2019.

{¶ 3} The matter proceeded to a jury trial. Victorie Clifton, Zachariah's girlfriend, testified about an incident during the evening hours of Thanksgiving Day between Amison and Zachariah. Earlier that day, Zachariah had gone to retrieve Victorie's dog from a residence on Manchester Avenue in Middletown. This residence was the home of Amison and his girlfriend, Crystal Proffitt. Apparently, neither Amison nor Crystal were home when Zachariah retrieved the dog; Zachariah was let into the home by Crystal's younger brother.

{¶ 4} Zachariah and Victorie returned with the dog to their apartment on Crawford Street in Middletown. Later that evening, they were outside the apartment. A grey Ford Taurus, which Victorie recognized as Crystal's vehicle, pulled up. Amison and another person Victorie did not know emerged from the vehicle.

{¶ 5} Amison and the other person "cornered" Zachariah. They began accusing him of breaking into Amison's home. Amison displayed a gun and then began gesturing for Zachariah and Victorie to get into the vehicle. Victorie retreated into the apartment. She found Zachariah's shotgun and began loading it.

{¶ 6} Next, Victorie heard Zachariah run up the apartment stairwell with someone following behind him. Zachariah came into the room and she handed him the shotgun. He positioned himself on a couch so that Amison could see he had a firearm. Amison started firing from the stairwell. Zachariah returned fire with the shotgun, shooting once. Amison fired again, five or six times in total. Zachariah shot back once more. Amison left.

{¶ 7} Eight days later, on December 6, 2019, Victorie testified that she and Zachariah were in the process of moving out of the Crawford Street apartment. At approximately 6:30 p.m., they left the apartment and began walking to the Manchester Apartments, located on Manchester Avenue. They were going there to find a friend to help them move.

{¶ 8} As Victorie and Zachariah were in the 1600 block of Manchester Avenue, heading west, Crystal's grey Taurus pulled up alongside them. Victorie saw Crystal in the passenger seat and Amison's cousin in the back seat. Amison then got out of the vehicle. He said, "y'all thought this was over." Victorie saw that Amison had a black pistol.

{¶ 9} Victorie and Zachariah turned and began walking away from Amison. Then, Amison began firing. They continued walking until the second or third shot, and then Zachariah began to run. He ran between two houses on Manchester Avenue. Victorie started running a different way. She heard Amison fire a final shot and heard Zachariah yell.

{¶ 10} Amison fled in the Taurus. Victorie found Zachariah collapsed near the intersection of Casper Avenue and Inglehart Street. He had been shot several times, including in both legs and in an arm. Another bullet entered his left lateral chest and exited the front of his chest.

{¶ 11} Zachariah died from the gunshot wounds. A coroner testified concerning Zachariah's autopsy. The bullet that entered Zachariah's chest pierced his left lung and both ventricles of the heart. The coroner opined that Zachariah's cause of death was the gunshot wound to the chest.

{¶ 12} On the third day of trial – following the state's presentation of its case – the court and parties met outside the presence of the jury to discuss an issue with one juror. Juror 212 reported to the court that his vehicle had been vandalized overnight. His windows had been smashed, and someone had spray painted the vehicle with "gibberish." The juror informed a Middletown police detective that he had concerns the vandalism might be related to the trial because, during jury selection, defense counsel had accidentally called him by name, rather than his juror number.

{¶ 13} Following this revelation, both the state and defense counsel questioned the

juror to determine how the event had impacted his ability to serve on the jury. Afterwards, defense counsel indicated that he was satisfied that Juror 212 could remain impartial and would prefer that he remain on the jury as a part of trial strategy. Ultimately, the court permitted Juror 212 to continue his jury service.

{¶ 14} Amison rested his case without presenting evidence. Defense counsel asked for an instruction on voluntary manslaughter, based on the argument that Zachariah provoked Amison by walking near his home just days after the Thanksgiving Day gunfight. The court denied this request, concluding that enough time had passed since the incident for passions to cool.

{¶ 15} The jury returned guilty verdicts on all counts of the indictment. Amison appeals, raising two assignments of error.

{¶ 16} Assignment of Error No. 1:

{¶ 17} APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 18} Amison argues that defense counsel provided constitutionally defective representation by failing to strike Juror 212. Amison contends that Juror 212 made statements evidencing bias, which demonstrated he could not act as an impartial juror.

{¶ 19} To prevail on an ineffective assistance of counsel claim, Amison must establish (1) deficient performance by trial counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984) and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. The failure to demonstrate either

prong is fatal to an ineffective assistance of counsel claim. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54. In considering an ineffective assistance claim, an "appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 54.

{¶ 20} As to the statements demonstrating bias or impartiality, Amison refers to Juror 212's comment that it made him nervous when defense counsel called him by name and that he was concerned that the vandalism was related to his jury service. Amison specifically points to Juror 212's response when asked if he could remain impartial: "[d]efinitely it raises questions and makes – makes me nervous * * *." Amison contends that Juror 212's admission to being nervous demonstrated a bias that compromised his ability to impartially decide the case.

{¶ 21} This court finds that the record does not support the argument that Juror 212 demonstrated bias or an inability to remain impartial. Amison focuses on selective comments wherein Juror 212 indicated he was nervous. Amison, however, disregards Juror 212's multiple affirmations that, despite what occurred, he believed he could continue his jury service and decide the case impartially.

{¶ 22} When asked by the prosecutor if he felt the incident could affect his ability to be a fair and impartial juror, Juror 212 indicated he was initially nervous but that after speaking with the Middletown police detective investigating the vandalism, "I think I'm okay." Juror 212 further assured the prosecutor that the state should have no concerns about having him serving as a juror. Defense counsel then questioned the juror:

> Counsel: * * * as far as this incident goes involving your car, you still have an open mind with respect to hearing evidence and hearing arguments and that that this doesn't affect your

position in terms of your ability to remain impartial?

Juror 212: No, sir.

Counsel: Okay, so same thing. I don't have to worry on behalf of [Amison] that this is going to somehow prejudice you towards him or that you're going to – it's going to go on his account?

Juror 212: No, sir.

{¶ 23} Counsel additionally questioned Juror 212 about his contact with the Middletown police detective concerning her investigation into the vandalism. Juror 212 assured defense counsel that the contact would not influence his opinion with respect to deciding Amison's case. Finally, defense counsel once again asked Juror 212 if he could remain neutral:

> Counsel: * * * what we're looking for is an impartial trial to be presented to you. So I guess it comes back to that question; do you think that you can do your duty as a juror and finish that out, given what's happened?
>
> Juror 212: Yes, sir.

{¶ 24} The court then excused Juror 212 so that the parties could discuss the matter further. During this conversation, defense counsel indicated his belief that Juror 212 had been rehabilitated and it appeared to him that he could finish his duty as a juror. Defense counsel also indicated he wished for Juror 212 to complete his service for purposes involving trial strategy.[1]

{¶ 25} Upon review, this court finds that Amison has not established that his counsel's performance fell below an objective standard of reasonable representation. Juror 212's comments that he was nervous about the situation reflect an understandable emotion but do not demonstrate bias. He clarified that, although he was nervous, he felt better after

---

1. Counsel indicated that he thought it would be beneficial to retain Juror 212 because he was a person of color and probably the closest person on the jury to Amison, in terms of being a peer.

speaking with the detective. And Juror 212 repeatedly represented to both the prosecutor and defense counsel that, notwithstanding the incident, he felt capable of performing his civic duties and would remain impartial. Finally, defense counsel explained his strategic rationale in retaining Juror 212. This court must give wide deference to strategic trial decisions and there is nothing in the record that would cause us to second-guess defense counsel's strategy in this case. This court overrules Amison's first assignment of error.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE OFFENSE OF VOLUNTARY MANSLAUGHTER IN VIOLATION OF MR. AMISON'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.

{¶ 28} Amison argues that the court erred in failing to instruct the jurors on voluntary manslaughter because the evidence presented at trial would reasonably support an acquittal on the murder charge and a conviction for voluntary manslaughter.

{¶ 29} An appellate court reviews a trial court's decision on a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 30} "Voluntary manslaughter is not a lesser included offense of murder, but an inferior degree of murder." *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 33, citing *State v. Shane*, 63 Ohio St.3d 630, 632 (1992); *State v. Harrop*, 12th Dist. Fayette No. CA2005-12-036, 2006-Ohio-6080, ¶ 11. Nevertheless, "a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." *Shane* at *id.*

{¶ 31} R.C. 2903.03(A), Ohio's voluntary manslaughter statute, provides: "No

person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." Consequently, an instruction on voluntary manslaughter is warranted only when there is "evidence of reasonably sufficient provocation occasioned by the victim * * *." *Shane* at paragraph one of the syllabus.

{¶ 32} For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *Id.* at 635. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." *Id.* at 634.

{¶ 33} Amison contends the evidence showed that he believed Zachariah had broken into his home on Thanksgiving Day and that he and Zachariah had thereafter engaged in a gunfight. Amison further argues that Zachariah was known to have access to firearms and was walking on Manchester Avenue, in the area of Amison's home. Amison contends that these facts demonstrated a reasonably sufficient provocation.

{¶ 34} However, the evidence related to the Thanksgiving Day gunfight indicates that Amison was, at all times, the aggressor. He confronted Zachariah at Zachariah's apartment. He brandished and fired his weapon first. Zachariah only fired back defensively. Additionally, eight days elapsed between the gunfight and the December 6 shooting, which was more than sufficient time to allow Amison the opportunity for reflection and for any fit of rage to subside or sudden passion to cool. Finally, with respect to the December 6 event, the evidence reflects that the attack upon Zachariah was entirely unprovoked. Zachariah and Victorie were simply walking in a public area when Amison emerged from a vehicle and displayed a pistol. Moreover, Zachariah turned and walked away from Amison, evidencing

a further, albeit futile attempt, to deescalate the situation. Accordingly, the record contains insufficient evidence of any provocative acts by Zachariah and therefore the court did not abuse its discretion in refusing to instruct the jurors on voluntary manslaughter. This court overrules Amison's second assignment of error.

{¶ 35} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.