[Cite as *State v. Moody*, 2022-Ohio-2529.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-05-052 |
| | : | O P I N I O N |
| - vs - | | 7/25/2022 |
| | : | |
| ZYQUON MOODY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-06-0692

Michael T. Gmoser, Butler County Prosecuting Attorney, and Willa Concannon, Assistant Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**PIPER, J.**

{¶ 1}   On June 17, 2020, Zyquon Moody was indicted on one count of felony murder and two counts of felonious assault with accompanying firearm specifications.   The indictment arose from an altercation on June 10, 2020, in which Antaun Hill was shot and killed.   Moody pled not guilty to the charges and the matter proceeded to a five-day jury trial.   Moody now timely appeals from his convictions resulting from the trial.

**Relevant Factual Background**

{¶ 2}   The evidence revealed that groups of teenagers from Fairfield and Winton Woods arranged to fight a rival group from Lakota at the Liberty Township YMCA after dark. Romel Velazquez, a member of the Winton Woods group, brought a .40-caliber pistol to the fight while Moody, a member of the Lakota group, brought his .22-caliber rifle.

{¶ 3}   The groups arrived at the YMCA at approximately 10:00 pm and converged near an athletic field.  The groups started taunting and yelling at each other.  This later escalated to a physical confrontation.  Phillip Thomas, a member of the Fairfield group, testified that the fight lasted for approximately 10 minutes until he heard two distinct sets of gunfire that caused people to flee.  A video recording of the scene captured the sound of a set of 10 gunshots followed by a louder set of seven gunshots.

{¶ 4}   Upon others scattering from the scene, Hill was found lying on the ground with gunshot wounds to his chest, near the clavicle, and to his head.  Moody also sustained a gunshot wound to his abdomen.  Moody and Hill were both taken to West Chester Hospital. Hill was later pronounced dead.

{¶ 5}   During the ensuing investigation, law enforcement recovered Moody's .22-caliber rifle and Velazquez's .40-caliber pistol.  Law enforcement also recovered .22-caliber and .40-caliber casings from the scene.  Significantly, Moody's DNA was discovered on the .22-caliber rifle and a forensic analysis revealed that the .22-caliber casings recovered on the scene were fired from Moody's rifle.  The bullet that struck Hill in the clavicle was the same caliber fired by Moody's rifle and the groove widths on the bullet were consistent with the rifle.  The state also elicited testimony that a gunshot from a .22-caliber firearm would be quieter than a gunshot from a .40-caliber firearm due to the smaller size of the projectiles and the lesser amount of gunpowder necessary to propel a .22-caliber projectile.

{¶ 6}   Sergeant Mike Hackney interviewed Moody at West Chester Hospital two

days after he underwent surgery for his gunshot injuries. During the interview, Moody first claimed that he was only at the YMCA that night to play football and that he never saw a firearm. Later, he acknowledged knowing of the fight but claimed he only went to record it. Moody's account shifted several more times during the course of the interview. After repeated denials, Moody finally acknowledged that he had seen the rifle and had even handled it on the night of the incident, but denied knowing where the rifle had come from. Moody later admitted that the rifle was registered in his name and that he was at the fight to provide "protection." Moody then admitted that he brought the rifle to the fight from his home, that he fired it multiple times, and that he was the only person shooting the rifle that night. Moody claimed that he only fired the rifle after someone else had opened fire and shot him. Moody also claimed that he only fired the rifle in the air to scare away people.

{¶ 7} The jury found Moody guilty of all counts. The trial court merged the counts and specifications and the state elected to proceed on the felony murder conviction. The trial court then sentenced Moody to an indefinite mandatory minimum term of 18-years to life. Moody now appeals, raising four assignments of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} MR. MOODY'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED AS THE TRIAL COURT IMPROPERLY DENIED HIS MOTION FOR JUDGMENT OF ACQUITAL UNDER CRIMINAL RULE 29 AFTER THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT HIM OF MURDER AND FELONIOUS ASSAULT.

{¶ 10} In his first assignment of error, Moody argues the trial court erred by denying his Crim. R. 29 motion for acquittal because the state failed to prove the "knowingly" element in the felonious assault charges emphasizing his statements to law enforcement

- 3 -

that he fired the gun in the air to scare off the crowd, but he intended to hit no one.

{¶ 11} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim. S*tate v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 15.

{¶ 12} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *Id.* The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22. In other words, the test for sufficiency requires a determination as to whether the state has met its burden of production at trial. *Lee* at ¶ 15, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.

**Element of Knowingly**

{¶ 13} Moody was convicted of felonious assault and felony murder. The felony murder aspect of R.C. 2903.02(B), provides, "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Felonious assault is defined in R.C. 2903.11, which states "[n]o person shall knowingly * * * [c]ause serious physical harm to another" or "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(1) and (2). A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain

result or will probably be of a certain nature." R.C. 2901.22(B); *State v. Haines*, 12th Dist. Clermont No. CA2021-07-040, 2022-Ohio-1145, ¶ 35. For purposes of the felony murder statute, both felonious assault convictions are second-degree felonies.

{¶ 14} Moody claims there was insufficient evidence of the "knowingly" element required for his convictions of felonious assault, which were the predicate offenses for his felony murder conviction. Moody alleges that he only admitted to "shooting the gun in the air. He stated that he was not intentionally shooting at anyone. He didn't know Hill."

{¶ 15} However, Moody's argument is without merit. In this case, the state presented sufficient evidence that Moody voluntarily fired his gun toward a group of people which conduct would probably cause a certain result: to wit, causing serious physical harm to someone using a deadly weapon. The serious physical harm that Moody caused Hill resulted in Hill's death. It is no coincidence that Hill was struck twice. Moody only claimed to shoot in the air without any intention to hit anyone. Here, the state presented evidence that Moody brought his loaded .22-caliber rifle to a planned fight against a rival group to provide "protection." During the altercation, Moody had hidden behind some trees and fired the rifle multiple times in rapid succession into a crowd of people, striking Hill in the chest and head, resulting in his death. Contrary to his argument otherwise, the state was not required to prove that Moody knew Hill or that it was his purpose to shoot him, but rather the state was required to prove that his conduct was probable to cause a certain result. *State v. Kimmie*, 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, ¶ 121. The state presented ample evidence that Moody acted "knowingly."[1] As such, the trial court properly overruled Moody's Crim.R. 29 motion. Moody's first assignment of error is overruled.

---

1. The jury was correctly instructed that the culpable mental state of a wrongdoer is only known in the mind of the wrongdoer. Because one cannot look into the mind of another, knowledge is determined from all of the facts and circumstances in evidence. *Ohio Jury Instructions*, CR Section 417.11 (Rev. Jan. 10, 2015); *State v. Conley*, 3d Dist. Logan No. 8-20-55, 2021-Ohio-2638, ¶ 30.

{¶ 16} Assignment of Error No. 2:

{¶ 17} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} In his second assignment of error, Moody argues that his convictions are not supported by the manifest weight of the evidence. Moody first asserts the state failed to prove beyond a reasonable doubt that he did not act in self-defense. He next asserts that the evidence presented at trial does not support a finding that he knowingly caused serious physical harm or knowingly caused physical harm to Hill by means of a deadly weapon.

{¶ 19} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Miller*, 12th Dist. Preble No. CA2019-11-010, 2021-Ohio-162, ¶ 13. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 14.

### State's Burden of Proof

{¶ 20} In addition to the elements of felony murder and felonious assault set forth above, the state also had the burden of proving beyond a reasonable doubt that the accused did not act in self-defense. R.C. 2901.05(B)(1); *State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 13. The elements of self-defense are cumulative and therefore

self-defense is inapplicable to a defendant who fails to satisfy any one element. *State v. McFarland*, 12th Dist. Butler No. CA2021-05-053, 2022-Ohio-2326, ¶ 42. Significantly, the accused must not be at fault in creating the situation giving rise to the affray and must have a bona fide belief that he or she was in imminent danger of death or great bodily harm and his or her only means of escape from such danger was the use of such force. *Id*.

{¶ 21} During trial, Moody argued that he acted in self-defense or, alternatively, that an unidentified "third shooter" killed Hill. On appeal, he now contends that the jury's verdict rejecting those defenses is against the manifest weight of the evidence.

{¶ 22} After reviewing the record, we find Moody's convictions for murder and felonious assault are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Furthermore, the state presented ample evidence establishing beyond a reasonable doubt that Moody did not act in self-defense when he shot Hill with his .22-caliber rifle.

**Self-defense**

{¶ 23} In this case, although Moody claims the jury should have accepted his conclusory statement to law enforcement that he acted in "self-defense," the record reflects that Moody provided multiple, conflicting accounts of the incident, none of which claimed he acted intentionally in shooting Hill to protect himself. Without developing any supporting factual information, Moody eventually concluded that his actions were in "self-defense."[2] During his interview with Sergeant Hackney, Moody provided contradictory accounts of what he saw and did during the altercation. He first claimed to have been at the YMCA to play football. When confronted about the rifle, Moody denied much knowledge of the

---

2. Despite the conclusory suggestion he shot in self-defense, Moody denied doing so with his suggestion that he only wanted to "scare" people by shooting in the air.

weapon until he eventually admitted to handling the weapon, later admitting that he fired the rifle in the air to scare people. Furthermore, the state presented testimony that Moody did not act in self-defense and was, in fact, the first person to fire gunshots. Phillips, the eyewitness who corroborated the fight's audio capturing two distinct sets of gunfire, testified that he first heard one set of gunshots followed by a louder set of gunshots. The state presented evidence from Detective Deterage and a firearms examiner that a .22-caliber rifle, such as the one Moody used, produces a lower sound volume than a .40-caliber handgun, such as the one Velazquez used, because a smaller size projectile contains less gunpowder.

{¶ 24} Furthermore, it is significant that Moody never presented any evidence that he intentionally shot Hill or intentionally used deadly force in an effort to protect himself. A defendant claiming self-defense concedes that he had the purpose to commit the act, but asserts that he was justified in his actions. *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶ 38. "By its terms, self-defense presumes intentional, willful use of force to repel force or to escape force." *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 54. Therefore, when an individual disclaims the intent to cause harm, it is contradictory to a claim of self-defense. *Davis* at ¶ 39. Moody's claim that he fired the gun in the air to scare people is inconsistent with any theory of self-defense. *State v. Roberts*, 8th Dist. Cuyahoga No. 69310, 1996 Ohio App. LEXIS 1873 (self-defense inapplicable where the defendant claimed that he fired a gun into the air intending to scare a crowd of people). Accordingly, Moody's conviction was not against the manifest weight of the evidence based upon a bare assertion of self-defense with no evidence to support such a conclusory claim. A trial court need not give an instruction of self-defense when no evidence supports the giving of such an instruction. *State v. Palmer*, 12th Dist. Clermont No. CA2021-07-035, 2022-Ohio-2181, ¶ 18; *Davis* at ¶ 40.

**Third Shooter**

{¶ 25} Despite his claims that he was acting in self-defense, Moody also asserts that the jury lost its way when it found that he caused Hill's injuries, arguing there was no eyewitness testimony and emphasizing that he informed law enforcement that he only fired his weapon into the air.  In so doing, Moody argues that a third person must have fired the shots that killed Hill.

{¶ 26} However, this case is not one in which the evidence presented at trial weighs heavily in favor of acquittal.  While Moody claims the jury should have accepted his version of events, the state presented ample evidence showing that Moody was the one who knowingly shot Hill that evening with his .22-caliber rifle ultimately resulting in Hill's death.  "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.  In convicting Moody of felony murder and two counts of felonious assault, it is clear the jury chose to give considerable weight to the testimony of the state's witnesses and disregarded Moody's conflicting and contradictory statements concerning self-defense or whether he fired his weapon in the air.  The jury was not obligated to believe Moody's version of events and was "free to believe or disbelieve all, part, or none" of the evidence presented.  *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 23.  Therefore, Moody's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE OFFENSE OF VOLUNTARY MANSLAUGHTER IN VIOLATION OF MR. MOODY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

{¶ 29} In his third assignment of error, Moody argues the trial court erred in failing to

instruct the jurors on the offense of voluntary manslaughter. In so doing, Moody fails to mention that the trial court originally included a voluntary manslaughter instruction, which it then removed upon Moody's objection and request to have it removed. Nevertheless, he claims that the evidence established that he acted with a sudden passion and rage because he allegedly had been shot by another person, Velazquez, prior to firing his weapon and therefore the jury should have found that he acted with sudden passion "inciting him to discharge his gun."

{¶ 30} However, where the failure to request a potentially applicable jury instruction was the result of a deliberate, tactical decision of trial counsel, it does not constitute plain error. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 85. While a trial court has a duty to include instructions on lesser-included offenses, a defendant still has the right to waive such instructions. *State v. Riley*, 10th Dist. Franklin No. 06AP-1091, 2007-Ohio-4409, ¶ 5-7, citing *State v. Clayton*, 62 Ohio St.2d 45, 47-48 (1980).

{¶ 31} In Ohio, there is a presumption that the failure to request an instruction on a lesser-included offense constitutes a matter of trial strategy and does not by itself establish plain error or the ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332 (1996). However, a defendant's choice to pursue an all-or-nothing defense does not require a trial judge to impose upon the state an all-or-nothing prosecution of the crime charged if the evidence would support a conviction on a lesser included offense. *State v. Wine*, 140 Ohio St. 3d 409, 2014-Ohio-3948, ¶ 32. In this case, the state did not object or further request that the trial court include a voluntary manslaughter instruction.

{¶ 32} Upon review of the record, the transcript is clear that Moody's deliberate decision to object to an instruction of voluntary manslaughter was a matter of trial strategy. Moody's counsel objected and requested that the instruction be removed from the proposed jury instructions. In retrospect, Moody may find that it would have been preferable to have

an instruction on voluntary manslaughter but there is simply no error where the record clearly demonstrates that the absence of the instruction was the result of reasonable trial strategy.

{¶ 33} While Moody may have made the tactical decision to request the removal of the voluntary manslaughter instruction, there is another reason why the voluntary manslaughter instruction should not have been provided. That is, the evidence reveals that voluntary manslaughter was inapplicable to the facts in this case.[3] As noted above, Ohio's murder statute defines both purposeful murder and felony murder:

> No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

R.C. 2903.02. The statute defining voluntary manslaughter states:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

R.C. 2903.03. The supreme court has therefore held that voluntary manslaughter is an inferior-degree offense to a charge of purposeful murder because "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * *." *State v. Shane*, 63 Ohio St. 3d 630, 632 (1992).

{¶ 34} While the supreme court has clearly established that voluntary manslaughter

---

3. This does not mean that it is error to provide a voluntary manslaughter instruction when the case involves both purposeful murder and felony murder. In many instances, cases will involve charges for both purposeful murder and felony murder. *State v. Hawthorne*, 5th Dist. Stark No. 2019CA00055, 2020-Ohio-756, ¶ 32.

is an inferior degree offense of *purposeful* murder, there is growing recognition that "[v]oluntary manslaughter is not an inferior-degree offense to felony murder via felonious assault because its elements * * * are neither contained within nor identical to the elements of felony murder via felonious assault." *State v. Hawthorne*, 5th Dist. Stark No. 2019CA00055, 2020-Ohio-756, ¶ 27-33, *appeal not allowed*, 159 Ohio St.3d 1494, 2020-Ohio-4317; *State v. Davis*, 9th Dist. Summit No. 25826, 2012-Ohio-1440, ¶ 23, *appeal dismissed having been improvidently accepted*, 136 Ohio St.3d 26, 2013-Ohio-1748.

{¶ 35} In *Hawthorne*, the defendant was indicted for felony murder and felonious assault after she fatally shot her estranged husband. *Hawthorne* at ¶ 2, 12. During trial, the defendant objected to the state's request for a voluntary manslaughter instruction, but the trial court overruled her objection. *Id.* at ¶ 13. The jury ultimately found the defendant not guilty of felony murder, but guilty of voluntary manslaughter and felonious assault. *Id.* at 14.

{¶ 36} On appeal, the defendant argued that the trial court erred by instructing the jury on the inferior degree offense of voluntary manslaughter. *Id.* at ¶ 21. The Fifth District reversed the defendant's conviction for voluntary manslaughter after concluding that the jury was improperly provided the voluntary manslaughter instruction. *Id.* at ¶ 33. In so doing, the court observed that the felony murder statute does not include an independent mens rea component and summarized the supreme court's holding in *Nolan* that "in a felony murder prosecution, although intent to commit the predicate felony is required, intent to kill is not." *Id.* at ¶ 28, citing *State v. Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, ¶ 9. Therefore, although voluntary manslaughter is an inferior degree of purposeful murder, it is not an inferior degree of felony murder because the elements for the offense are different. *Id.* at ¶ 29, citing *Davis*, 2012-Ohio-1440 at ¶ 23. Concluding, the court stated:

The jury was improperly provided with the option of convicting

[the defendant] of knowingly killing [the victim] in a fit of rage or under the influence of passion, a crime for which she had not been indicted, particularly where the jury simultaneously acquitted her on the charge of killing [the victim] as a proximate result of her knowingly committing the crime of felonious assault.

*Id.* at ¶ 33.

**{¶ 37}** We recognize that this court has on prior occasions engaged in analyses that may suggest that voluntary manslaughter is an inferior-degree offense to felony murder. *State v. Amison*, 12th Dist. Butler No. CA2020-08-093, 2021-Ohio-1537, ¶ 28-34; *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 33-37; *State v. Rice*, 12th Dist. Butler No. 2003-Ohio-01-015, 2004-Ohio-697; *State v. Harrop*, 12th Dist. Fayette No. CA2005-12-036, 2006-Ohio-6080, ¶ 10-14. In those cases, we discussed the complete absence of evidence demonstrating provocation in rejecting claims that a trial court erred by refusing to provide a voluntary manslaughter instruction. *Id.* However, the elements of felony murder were not analyzed in any significant manner.[4]

**{¶ 38}** Accordingly, we find the rationale of the Ninth District in *Davis* and the Fifth District in *Hawthorne* to be persuasive. In the present case, Moody was charged with felony murder. Therefore, the state had to prove that Moody caused Hill's death as a proximate result of the commission or attempted commission of one of the predicate felonies. R.C. 2903.02. Moody was not entitled to a voluntary manslaughter instruction because he was indicted for felony murder, not purposeful murder. Since the state was only required to prove that Hill's death was caused as a proximate result of Moody's commission of felonious assault, a charge or instruction on voluntary manslaughter, which requires a death be caused "knowingly," was inapplicable. *Davis* at ¶ 23; *Hawthorne* at ¶ 33.

---

4. In our prior cases, where voluntary manslaughter was referenced as an inferior-degree offense to felony murder, it was the reasonableness of provocation that was focused upon, not the precise issue of whether voluntary manslaughter is an inferior-degree offense to felony murder.

{¶ 39} This is not to suggest that felony murder does not contain a culpable mental state. *See State v. Brakeall*, 12th Dist. Fayette Nos. CA2008-06-022 and CA2008-06-023, 2009-Ohio-3542, ¶ 29. This court has previously held that the culpable mental state required to support a conviction under R.C. 2903.02(B) is the same one that must be proved to support a conviction for the underlying felony offense of violence. *Id.* at ¶ 28. With felonious assault, the culpable mental state is "knowingly," which we have already found was met in this case. However, if Moody had wished to argue that he acted without the culpable mental state for felonious assault based upon his claims that he acted with sudden passion and rage, his recourse would have been to request an instruction for aggravated assault on the predicate felonies, not that he was entitled to an instruction on voluntary murder as an inferior-degree offense of felony murder. R.C. 2903.12(A); *State v. Deem*, 40 Ohio St.3d 205, 210-211 (1988). For those reasons, Moody was not entitled to a voluntary manslaughter instruction and his third assignment of error is without merit.

{¶ 40} Assignment of Error No. 4:

{¶ 41} APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 42} In his fourth assignment of error, Moody alleges that his counsel was ineffective for foregoing an instruction on voluntary manslaughter. To prevail on his ineffective assistance of counsel claim, Moody must show (1) that his trial counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced as a result. *State v. Widmer*, 12th Dist. Warren No. CA2011-03-027, 2012-Ohio-4342, ¶ 87, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052 (1984).

{¶ 43} In the present case, Moody has not demonstrated that his trial counsel's

performance was deficient or that he was prejudiced as a result of this alleged deficiency. Considering the law discussed herein as well as the evidence, Moody was not entitled to a voluntary manslaughter instruction. Furthermore, the supreme court has held that the "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Griffie*, 74 Ohio St.3d at 333, citing *State v. Clayton*, 62 Ohio St.2d 45. Although Moody's trial counsel's strategy in seeking an acquittal was unsuccessful, this does not mean that his counsel's performance was constitutionally deficient. *See Clayton* at 49 ("Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client"). "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance." *State v. Martin*, 12th Dist. Nos. CA2003-06-065 and CA2003-06-066, 2004 Ohio 702, ¶ 12.

{¶ 44} After a careful review of the record, we cannot say that Moody's counsel's performance was deficient or fell below an objective standard of reasonableness. Furthermore, we cannot say that the failure to request jury instructions for voluntary manslaughter caused prejudice because it was inapplicable to the present case. Accordingly, Moody did not receive ineffective assistance of counsel and his fourth assignment of error is overruled.

{¶ 45} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.