[Cite as *State v. Davis*, 2012-Ohio-1440.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25826 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| TYRAN L. DAVIS | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 10 2961 (A) |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Tyran Davis shot Steven Myers at least ten times, killing him. A jury acquitted Mr. Davis of murder, but convicted him of felony murder and felonious assault with a firearem specification. The trial court sentenced him to eighteen years to life in prison. He has appealed. This Court affirms his convictions because he was not entitled to a voluntary manslaughter jury instruction in relation to the felony murder via felonious assault charge, he was not prejudiced by the court's failure to give the instruction in relation to the purposeful murder charge, and the trial court correctly overruled his Batson challenge. We reverse in part and remand the matter for resentencing due to plain error in the imposition of multiple sentences for counts all parties agreed should have been merged for sentencing purposes.

BACKGROUND

{¶2} On the evening of October 8, 2010, Mr. Davis's sister, Denika Davis, went with two other sisters, a cousin, and a friend to the Wilbeth-Arlington Homes to visit Shaneka McBride-Wilson and her children. As they were leaving, Mr. Myers tried to get in their car. Ms. Davis refused to allow it as nobody in the car knew him. Mr. Myers threatened to "cancel" her and threw a drink in her face. Just then, Mr. Myers's girlfriend, Shereene Ford, arrived. Mr. Myers convinced Ms. Ford to physically fight Ms. Davis. After several minutes, the fight ended, and Ms. Davis and her companions left the Wilbeth-Arlington Homes.

{¶3} Later that evening, Ms. Davis and her friends returned to the complex to resume fighting with Ms. Ford. After a second physical altercation between the two women, Ms. Davis and her friends remained in the parking lot. While this was going on, Mr. Davis was on the west side of Akron at a friend's house. Terrika Cornelius and Jasmein Downing, Mr. Davis's pregnant girlfriend, drove from the scene of the fights to pick up Mr. Davis and take him to the Wilbeth-Arlington Homes.

{¶4} Several witnesses testified that some of the women watching the fight had tried to intervene to break it up, but Mr. Myers attacked them, causing them to retreat. According to Ms. Cornelius, Mr. Myers "got to hitting people. . . . He hit everybody except me. . . . I'm the only female that did not get hit." Ms. Cornelius testified that Mr. Myers "punched everybody that was close to the fight. He didn't want anybody there." Ms. Cornelius said that, on the way across town, Ms. Downing told Mr. Davis how the fight had unfolded and specifically mentioned that Mr. Myers had punched Ms. Davis and had pushed Tyiesha Shellman. Ms. Shellman, another of Mr. Davis's sisters, was also pregnant at the time.

{¶5} When Mr. Davis arrived at the housing complex, Ms. Davis, Ms. Ford, and another woman were talking outside of one of the apartments. Meanwhile, across the street, Mr.

Myers apparently began taunting Mr. Davis in an attempt to get him to fight with him in the street, but Mr. Davis was not interested. Soon, another physical fight began between Ms. Davis and Ms. Ford. According to Ms. Cornelius, Ms. Downing headed toward the fight, but before she could get there, Mr. Myers punched her. Most witnesses believed that Ms. Downing was trying to break up the fight, but nobody could say for sure. Ms. Downing did not testify.

{¶6} Several witnesses testified that, ten to thirty seconds before shots rang out, Mr. Myers punched Ms. Downing hard with a closed fist. Ms. Downing fell to the ground and seemed to be unconscious, or at least stunned. Tierra Shellman, another of Mr. Davis's sisters, testified that she yelled, "Bro, he just hit your baby's mama." Witnesses agreed that, prior to the shooting, Mr. Myers was trying to get Mr. Davis to fight him, but had not been successful. At least one witness said that Mr. Davis had denounced the entire situation as "stupid" and was walking away when Ms. Shellman announced that Ms. Downing had been hurt.

{¶7} Witnesses variously described Mr. Davis's behavior immediately after Ms. Shellman yelled that Ms. Downing had been hit. They said that Mr. Davis walked, walked fast, jogged, or ran across the street while shooting at Mr. Myers. Ms. McBride-Wilson testified that she saw Mr. Davis's face as he "jog[ged]" back up the street toward Mr. Myers, just before he started shooting. She said that Mr. Davis "just looked like himself[.]" When asked if he looked enraged or angry, she said that he did not have any expression on his face. Mr. Davis did not testify.

## BATSON CHALLENGE

{¶8} Mr. Davis's second assignment of error is that the State peremptorily excused an African-American prospective juror because of his race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "The Equal Protection Clause of the Fourteenth Amendment strictly prohibits a state

actor from engaging in racial discrimination in exercising peremptory challenges. Such discrimination is grounds to reverse a conviction returned by a jury tainted with such discrimination." *State v. Murphy*, 91 Ohio St. 3d 516, 528 (2001) (citing *Batson v. Kentucky*, 476 U.S. 79 (1986); *State v. White*, 85 Ohio St. 3d 433, 436-438 (1999)).

{¶9} "A court adjudicates a *Batson* claim in three steps." *State v. Were*, 118 Ohio St. 3d 448, 2008-Ohio-2762, at ¶ 61 (quoting *State v. Bryan*, 101 Ohio St. 3d 272, 2004-Ohio-971, at ¶ 106). "First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge." *Bryan*, 2004-Ohio-971, at ¶ 106 (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)). "However, the 'explanation need not rise to the level justifying exercise of a challenge for cause.'" *Id.* (quoting *Batson*, 476 U.S. at 97). "Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination." *Id.* (citing *Batson*, 476 U.S. at 98).

{¶10} During the selection of jurors, the prosecutor peremptorily challenged an African-American prospective juror. After the parties exhausted their peremptory challenges, but before any prospective jurors had been released, Mr. Davis objected to the challenge of prospective juror number ten on the basis of *Batson v. Kentucky*, 476 U.S. 79 (1986). The defense asked for a race-neutral reason for the dismissal. Without the trial court deciding whether the defense had met its burden to present a prima facie case of racial discrimination, the prosecutor offered two race-neutral reasons for the strike: the prospective juror's apparent confusion about the burden of proof and a stated belief that men should not "lay hands on women." After some discussion, the trial court overruled the *Batson* challenge and agreed to strike prospective juror number ten.

{¶11} The State has first argued that Mr. Davis's objection was untimely because he did not object until all the peremptory challenges had been exercised. A *Batson* objection that is entered before the jury is sworn is not untimely. *State v. Hunter*, 2d Dist. No. 22201, 2008-Ohio-2887, at ¶ 12. Thus, Mr. Davis's objection was timely.

{¶12} The State has also argued that Mr. Davis failed to make a prima facie case of racial discrimination so that the State had no duty to respond with a race-neutral reason for the strike. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *State v. Curtis*, 3d Dist. No. 9-02-11, 2002-Ohio-5409, at ¶ 38 (quoting *Hernandez v. New York*, 500 U.S. 352, 359 (1991)). *See also State v. Murphy*, 91 Ohio St. 3d 516, 528 (2001). Therefore, this Court will not consider whether Mr. Davis established a prima facie case of racial discrimination.

{¶13} "The second step of [the *Batson*] process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-768 (1995). "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* at 768 (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). At the second step of the analysis, the state's reason for the strike does not need to give the trial court a plausible basis for believing that the prospective juror's ability to perform his or her duties will be affected. *Id.* "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* (citing *Batson v. Kentucky*, 476 U.S. 79, 98 (1986)).

The State offered two facially race-neutral reasons for dismissing prospective juror number ten. Neither confusion over the burden of proof nor a belief that men should not hit women are peculiar to any race. Therefore, the trial court properly proceeded to the third step of the analysis.

{¶14} Determining whether Mr. Davis carried his ultimate burden of proving that the prosecutor's removal of prospective juror number ten was the product of discriminatory intent, presented the trial court with a "pure issue of fact." *Hernandez v. New York*, 500 U.S. 352, 364 (1991). "A trial court's findings of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *State v. Watson*, 9th Dist. No. 25229, 2011-Ohio-2882, at ¶ 9 (citing *State v. Bryan*, 101 Ohio St. 3d 272, 2004-Ohio-971, at ¶ 106). *But see State v. Bowden*, 9th Dist. No. 24767, 2010-Ohio-758, at ¶ 30 (Dickinson, P.J., concurring) ("Ohio courts review findings of fact to determine whether they are supported by sufficient evidence and whether they are against the manifest weight of the evidence.") (quoting *State v. Browand*, 9th Dist. No. 06CA009053, 2007-Ohio-4342, at ¶ 29).

{¶15} The prosecutor explained that she was concerned that the prospective juror "thought that the burden of proof may be higher than it legally is. He also said that he was raised not to lay hands on women [and] this case involves an allegation that the victim did, in fact, lay hands on or hit a woman[.]" In regard to the burden of proof, prospective juror number ten said that he thought the burden of proof applicable to this case was something higher than beyond a reasonable doubt. He also said that men should never hit women. The court's determination that the prosecutor was not motivated by discriminatory intent is neither clearly erroneous nor is it against the manifest weight of the evidence. Mr. Davis's second assignment of error is overruled.

## VOLUNTARY MANSLAUGHTER JURY INSTRUCTION

{¶16} In his first assignment of error, Mr. Davis has argued that the trial court incorrectly failed to instruct the jury on voluntary manslaughter. The voluntary manslaughter statute provides that, "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . . ." R.C. 2903.03(A).

{¶17} The State charged Mr. Davis with murder, felony murder via felonious assault, and felonious assault. R.C. 2903.02(A), (B); R.C. 2903.11(A). Mr. Davis proposed written jury instructions regarding voluntary manslaughter. Despite extensive discussion on the record, the trial court refused to give the proposed instruction because it determined that the situation failed to meet the objective prong of the two-prong test for sufficient provocation by the victim. Mr. Davis did not testify, but his lawyers proffered a summary of the testimony he would have given if the trial court had been open to the possibility that he could present sufficient evidence of provocation to warrant a voluntary manslaughter instruction. Mr. Davis did not request jury instructions for any other lesser crimes.

{¶18} The jury acquitted Mr. Davis of purposeful murder, but convicted him of felonious assault and felony murder via the predicate offense of felonious assault. The parties' arguments address only whether there was evidence of reasonably sufficient provocation to warrant a voluntary manslaughter instruction. The dispositive issue, however, is whether Mr. Davis was prejudiced by the lack of a voluntary manslaughter instruction.

{¶19} The State charged Mr. Davis with two types of murder: (1) purposeful murder and (2) felony murder. Section 2903.02(A) of the Ohio Revised Code proscribes "purposely

caus[ing] the death of another[.]" Section 2903.02(B) proscribes "caus[ing] the death of another as a proximate result of . . . committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" Felonious assault, a second degree felony, is defined as "knowingly . . . caus[ing] serious physical harm to another" or "caus[ing] or attempting to cause physical harm to another . . . by means of a deadly weapon[.]" R.C. 2903.11(A); (D)(1)(a). The State charged Mr. Davis under both subsections of the felonious assault statute.

{¶20} "The analysis whether a defendant is entitled to have the jury instructed on an offense for which the defendant has not been indicted begins by first determining whether the requested instruction falls within the statutory definition of a lesser included offense or inferior degree offense." *State v. Ledbetter*, 2d Dist. No. 93-CA-54, 1994 WL 558996 at *3 (Oct. 14, 1994). The Ohio Supreme Court has explained that, under Rule 31(C) of the Ohio Rules of Criminal Procedure and Section 2945.74 of the Ohio Revised Code, a jury may consider lesser unindicted offenses only if the evidence supports the lesser charge and the lesser charge falls into one of three groups. *State v. Deem*, 40 Ohio St. 3d 205, 208 (1988). A jury may consider lesser unindicted crimes that are (1) a lesser-included offense of the crime charged, (2) an inferior degree of the crime charged, or (3) an attempt to commit the crime charged, if such an attempt is an offense at law. *Id*.

{¶21} Lesser-included offenses are said to be necessarily included within the higher charge because the greater offense can never be committed without the lesser offense being committed, as statutorily defined, and some element of the greater offense is not required to prove commission of the lesser offense. *State v. Deem*, 40 Ohio St. 3d 205, 209 (1988). "[A]n offense is an 'inferior degree' of the indicted offense where its elements are *identical* to or contained within the indicted offense, except for one or more additional mitigating elements

which will generally be presented in the defendant's case." *Id.* at 209. The Ohio Supreme Court has also explained that "[a] fourth group of 'lesser' offenses includes those completed offenses of a lesser degree for which the defendant was not indicted and which are neither *necessarily* included within the indicted offense nor identical to the indicted offense save for an additional mitigating element. An instruction on this fourth group of lesser offenses, due to the absence from R.C. 2945.74 and Crim.R. 31(C), may not be given to the jury." *Id.* at 209 n.2.

{¶22} Voluntary manslaughter is an inferior-degree offense to a charge of purposeful murder under Section 2903.02(A) of the Ohio Revised Code because "its elements are . . . contained within the indicted offense, except for one or more additional mitigating elements . . . ." *State v. Shane*, 63 Ohio St. 3d 630, 632 (1992) (quoting *State v. Tyler*, 50 Ohio St. 3d 24, 36 (1990)). Thus, in relation to the murder charge, Mr. Davis was entitled to an instruction on voluntary manslaughter if the evidence supported the mitigating factor of reasonably sufficient provocation. Mr. Davis, however, was acquitted of purposely killing Mr. Myers. Therefore, the trial court's failure to give the requested instruction, if error, was harmless in relation to the murder charge.

{¶23} Voluntary manslaughter, the only unindicted crime for which Mr. Davis requested an instruction, is neither a lesser-included nor inferior-degree offense to felony murder via felonious assault. It is not a lesser-included offense because felony murder can be committed without voluntary manslaughter necessarily being committed. That is, one could cause the death of another as a proximate result of committing felonious assault without having been provoked. Voluntary manslaughter is not an inferior-degree offense to felony murder via felonious assault because its elements, except for the mitigating factor of rage provoked by the victim, are neither contained within nor identical to the elements of felony murder via felonious assault. That is,

"knowingly caus[ing] the death of another" is not contained within or identical to proximately causing the death of another by "knowingly . . . caus[ing] serious physical harm" to him or by "caus[ing] or attempting to cause physical harm . . . by means of a deadly weapon[.]" R.C. 2903.02(B); R.C. 2903.03(A); R.C. 2903.11(A). Therefore, Mr. Davis was not entitled to his requested instruction in relation to the felony murder charge because voluntary manslaughter falls into the "fourth group of 'lesser' offenses" for which an instruction may not be given to the jury. *State v. Deem*, 40 Ohio St. 3d 205, 209 n.2 (1988).

{¶24} Mr. Davis only asked the trial court for a voluntary manslaughter instruction and has argued on appeal that he was prejudiced by the trial court's failure to give that instruction. He did not request jury instructions for any other unindicted lesser crimes that may have applied to the felony murder and felonious assault charges, such as involuntary manslaughter and aggravated assault. Thus, regardless of what evidence he could have produced tending to show that he was acting under the influence of a sudden rage provoked by Mr. Myers, Mr. Davis was not prejudiced by the trial court's refusal to give the requested jury instruction in relation to purposeful murder and the court properly refused to give it, albeit for an incorrect reason, in regard to the other charges. Mr. Davis's first assignment of error is overruled.

## SENTENCING

{¶25} The State has called this Court's attention to a post-release control error in this case. According to the State, the part of the sentence imposing three years of mandatory post-release control should be vacated because there is no post-release control for murder and the trial court imposed no sentence for felonious assault. In fact, although the trial court wrote that it merged the felonious assault and felony murder charges at sentencing, it imposed a sentence for each charge. In addition to fifteen years to life for felony murder with a consecutive three years

for the firearm specification, the trial court sentenced Mr. Davis to eight years in prison plus three years of mandatory post-release control for felonious assault.

{¶26} When allied offenses are merged at sentencing, the trial court is permitted to impose only one sentence for the conduct. *State v. Underwood*, 124 Ohio St. 3d 365, 2010-Ohio-1, at ¶ 26. The Ohio Supreme Court has held that it is plain error to impose multiple sentences for allied offenses of similar import. *Id.* at ¶ 31. Just before sentencing, the trial court asked the parties whether everyone agreed that felonious assault would merge with the murder charge for the purposes of sentencing. The prosecutor agreed that the counts should merge. As the trial court's imposition of sentences on both counts is plain error, this Court must reverse and remand this matter for resentencing.

## CONCLUSION

{¶27} Mr. Davis's second assignment of error is overruled because the trial court's determination that the prosecutor was not motivated by discriminatory intent in striking an African-American from the venire is neither clearly erroneous nor against the manifest weight of the evidence. His first assignment of error is overruled because he was not entitled to a voluntary manslaughter jury instruction in relation to the felony murder via felonious assault charge and he was not prejudiced by the court's failure to give the instruction in relation to the purposeful murder charge. The trial court's imposition of sentences on counts of felonious assault and felony murder, after all parties agreed the counts would merge for purposes of sentencing, was plain error. The judgment of the Summit County Common Pleas Court is affirmed in part, reversed in part, and the cause is remanded for resentencing in accordance with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶28} In theory, the majority's approach makes sense. In the abstract, if a defendant is not convicted of the greater offense, he is not prejudiced by the trial court's failure to give an

instruction on the inferior degree offense. In a practical sense, however, an offense cannot be looked at in a vacuum when multiple offenses for the same conduct are charged.

{¶29} The majority agrees that the trial court erred by failing to give the voluntary manslaughter instruction, but concludes that the error was harmless because the jury acquitted Davis of the higher-degree offense. It is ironic that the fact that the defendant was correct in his argument to the trial court that he was not criminally liable for purposeful murder is now used against him on appeal to decide that the trial court's error was harmless.

{¶30} Trial counsel could have requested every instruction the majority suggests – voluntary manslaughter, aggravated assault, and involuntary manslaughter – and still been thwarted by two insurmountable obstacles. First, the trial court could not instruct on aggravated assault. In *State v. Deem*, 40 Ohio St.3d 205 (1988), which is cited by the majority, the Supreme Court held that if a defendant, on trial for felonious assault, presents evidence of sufficient provocation, the trial court *must* instruct the jury on aggravated assault. *Deem*, paragraph four of the syllabus. Here, the trial court had already decided - erroneously - that Davis could not meet the provocation requirement, so it could not give an instruction on aggravated assault. Without an aggravated assault instruction, there would be no basis to instruct the jury on involuntary manslaughter. Accordingly, the trial court's erroneous conclusion about provocation prevented Davis from receiving an instruction on voluntary manslaughter, involuntary manslaughter, and aggravated assault.

{¶31} Second, if the trial court had instructed on aggravated assault and involuntary manslaughter, but not on voluntary manslaughter, and the jury returned a guilty verdict on felony murder and an acquittal on murder, then the trial court's failure to give the instruction on

voluntary manslaughter would still not be reviewable on appeal under the majority's analysis. Thus, the trial court's error is not harmless.

{¶32} I would conclude that the matter is reviewable, that the striking of Davis's pregnant girlfriend was sufficient provocation to meet the objective prong and remand the matter for a new trial. I would not reach the subjective prong since the trial judge did not reach that issue having felt compelled by case law to reach the conclusion that striking another is not sufficient provocation.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.