[Cite as *State v. Pence*, 2025-Ohio-5696.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA7 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Isaac Pence, | : | |
| Defendant-Appellant. | : | **RELEASED 12/11/25** |

_____
<u>APPEARANCES</u>:

Benjamin E. Fickel, Logan, Ohio, for appellant.

Dave Yost, Ohio Attorney General, and Andrea K. Boyd, Special Prosecuting Attorney, Assistant Attorney General, Columbus, Ohio, for appellee.
_____
Hess, J.

{¶1}   Isaac Pence appeals from a judgment of the Hocking County Common Pleas Court convicting him, following a jury trial, of murder and tampering with evidence. Pence presents one assignment of error asserting that the trial court erred when it failed to instruct the jury on provocation, aggravated assault, involuntary manslaughter and voluntary manslaughter.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   Pence was indicted on six counts in connection with the stabbing death of Charles Starner:  (1) Count One, murder in violation of R.C. 2903.02(A),R.C. 2903.02(D),

and R.C. 2929.02(B), which we will refer to as "purposeful murder"; (2) Count Two, murder in violation of R.C. 2903.02(B), R.C. 2903.02(D), and R.C. 2929.02(B), which we will refer to as "felony murder"; (3) Count Three, felonious assault in violation of R.C. 2903.11(A)(2) and (D)(1)(a); (4) Count Four, felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a); (5) Count Five, obstructing justice in violation of R.C. 2921.32(A)(4) and (C)(4); and (6) Count Six, tampering with evidence in violation of R.C. 2921.12(A)(1) and (B). The matter proceeded to a jury trial at which the following evidence was presented.

## A.  Initial Events

{¶3}   On April 22, 2023, Pence and his girlfriend, Sabra Flagg, went to her brother, Dalton Flagg's, birthday party at a cabin in Hocking County. In the early hours of April 23, 2023, there was an incident inside the cabin involving Pence, Dalton, and his girlfriend, Arizon Cain.  Dalton and Cain testified that Pence pushed Cain.  Pence testified that he might have pushed Dalton into Cain, and "the whole party erupted," "everyone started coming at" him, and people accused him of pushing Cain and told him to leave. Subsequently, there was a physical altercation outside between Pence and another partygoer, and others got involved.  Pence testified that about ten people tried to "kick [his] ass" by kicking, punching, and shoving him, and the group slid down a hill. No one testified that Starner participated.

## B.  The Stabbing – Pence's Testimony

{¶4}   Pence testified that after sliding down the hill, he got in his car and started it.  Sabra was at the passenger door, but Dalton and Cain kept her from getting in the car. Pence told them to let her in, but Dalton yelled that she was not leaving with him.  Then, Pence's "door was being pulled on," and his windows were "being hit." Dalton pulled

Sabra where Pence could not see her, and Pence opened his door and stood between it and the car so that he could talk to them and try to get her inside. He testified: "At that point, there are people behind me and there are people in front of me. They were slamming my car door into me. Other people were attacking me, trying to hit me. But I have my door shielding me." When asked who was trying to attack or hit him, he testified, "I am not sure." He testified that there were maybe four or five people by the driver's side passenger door and that Starner and James Price, who he did not know, were in front of him.

{¶5} Pence testified, "As I'm being attacked, I didn't know if they were going to pull me out, or what was going to happen, so I ended up pulling out my knife and proceed to stab anything that I could, so I could leave." Pence thought he stabbed twice and hit someone in the arm. He was "trying to get an arm" because he thought that if he "wouldn't have got them to leave right then, they might have killed me." He testified that "[t]hey were trying to hit me in the head." When asked who was trying to do that, Pence testified, "It seemed to be a couple people. I didn't know if they had weapons or anything." Pence testified that a driver's side door was dented in and "bowed out at the top," a mirror was "smashed frontwards," and a tiny window on the driver's side by the trunk was busted out. When asked, "When they were pulling on the door of your car, or pushing your car door, they're breaking your windows, they're smacking around with your mirror, did that make you angry?" Pence testified, "Yes." When asked who was doing that, Pence testified, "I'm not sure exactly who was doing it."

{¶6} Later, when asked who was "the person pushing the door at you while you were standing there half in and half out of your vehicle," he testified that it was Starner

and Price and that their actions made him mad. When asked, if Starner was assaulting him, Pence testified, "He was trying to." When asked how, Pence testified, "They were trying to hit me in the face" and "grabbing at me." He then testified that on video footage taken by Hannah Chapman, one can see Starner and Price try to hit him in the face. He also testified that one could "see them slamming the door into me." Pence did not think Starner and Price were trying to rip the door open. Pence admitted he said something like "don't touch my fucking car" during the stabbing but was not sure why. He "was just so angry and my words were just going." Pence rated his intoxication level at 12 on a scale of 1 to 10.

C.  The Stabbing – Other Evidence

{¶7}    Pence's car was parked next to Chapman's Toyota 4Runner. Chapman was worried about her vehicle getting damaged and recorded a 30 second video from the hood using her cell phone. The original video, a clarified version of the video, and a clarified and slowed down version of the video were admitted into evidence.

{¶8}    When the footage begins, Pence appears to be between the driver's door and vehicle. Though hard to see, a hand appears to move near his face and then lowers. At the time, Starner is slightly visible, and Price appears to have his back against the 4Runner. As Starner comes into view more, he appears to be standing with his back toward Pence's driver's door, and there appears to be an unidentified person beside him. A male voice says, "Get the fuck out of here, bro." Then a male voice says, "Hey, fuck the fuck off." Subsequently, Starner, who now appears to be positioned facing a little more towards Pence, lifts a hand up and immediately lowers it; it does not appear that he is trying to touch Pence. A few seconds later, Starner appears to lift a hand up near Pence's

right hand, which is above the door and by Pence's face. Pence's hand moves a little, and Starner puts his hand down. Later, it looks as if Starner crouches down. A few seconds later, it sounds as if a male voice says, "Motherfucker, get the fuck in and leave. Go!" Someone appears to raise a hand up near Pence's face and then lowers it. Then, Pence appears to start stabbing Starner, who now seems to be standing perpendicular to the door, with his back to the camera. While Pence makes multiple stabbing motions, a male voice says, "Get the fuck off my fucking car." Price pulls Starner back, and Starner appears to be holding a drink in his right hand. Before the stabbing, the car door seems mostly stationary until Starner crouches, at which point the door opens more before moving back to its previous position. At no time does Starner appear to attack the vehicle.

**{¶9}** Chapmen testified that she never saw Starner touch Pence. Starner did not make any motion to hit Pence with the door; Starner was "just holding kind of a constant force to make sure that he didn't get out." Starner did not do anything to the car door other than hold it closed. At one point, she saw Starner "turn around and with his hand, he said get in your car."

**{¶10}** Price testified that when he approached Pence's car, the door was cracked open, and Pence was in the doorway. Starner was holding the door, trying to keep Pence from getting back out of the car. Starner was not shoving the door into Pence. Price put his foot on the door to try to keep it closed. Pence was pushing the door one way, and Price and Starner were pushing it the other way. Price never saw Starner strike Pence. Price took his foot off the door after he saw Pence pull the knife out and, and Price "tried kicking the door hoping he'd drop it."

{¶11} Starner was airlifted to Grant Medical Center and died at 8:31 a.m. The postmortem examination report states that his cause of death was sharp force injuries to the head, neck, trunk, and extremities with vascular and soft tissue injuries, and his manner of death was homicide. A deputy coroner testified that Starner had 13 sharp force injuries, which meant there were 13 separate stabbing incidents.  He had an ethanol level of .135 grams percent from alcohol consumption, which meant he had "quite a few drinks." He had cocaine metabolites in his system, but cocaine and cocaethylene were not detected, which meant he did not consume the ethanol and cocaine at the same time, took cocaine 8 to 24 hours before he died, and consumed the ethanol closer to his death. Starner's girlfriend testified that he used cocaine the night of the party, which made him fidgety and hyper, but he went back to just being "drunk, but nothing out of the ordinary."

### D.  Pence's Post-Stabbing Conduct

{¶12}  After the stabbing, Pence went to a friend's home and told the friend that he got jumped at a party and had to stab someone.  Pence tossed a knife in the friend's flower bed and tossed another knife across the street.  The tip of one of the knives had a single DNA profile on it consistent with that of Starner.  Pence later went home, where he punched his stepdad while trying to get a gun out of the gun safe.  Pence testified that he thought his attackers were going to come to the house, wanted to protect it, and thought his stepfather was an attacker.

{¶13}  There was evidence that Pence told law enforcement that he was jumped and stabbed someone twice in the arm to defend himself.  Pence said that he was sitting down, and someone was reaching into his car, trying to grab him.  He also said they were ripping his car door open and that his door was dented and both his mirrors, a side

window, and potentially another window were broken. Pence initially told law enforcement the knife used in the stabbing was either in his car or at the cabin but later acknowledged he discarded it.  Pence told law enforcement he was trying to get in the safe because he "was going to go back to the cabin and try to scare them."

{¶14} Pence gave two written statements to law enforcement.  The first stated:

A fight started bc [sic] everyone assumed I pushed Arizon.  Everyone tried to get me to leave but I was drunk and ended up blacking out.  The fight moved outside and I ended up being pushe[d] onto the ground.  I then made it to my car and everything kept going.  I pulled a knife and started stabbing Charlie because they were all still attacking me and my car.  After stabbing him I left and threw the knife out.  Then I went and kept drinking until I went to sleep.

The second stated:

I want to say sorry for lying about the knife and sorry for everything that happened it should of never went that far.  I did not mean to hurt anybody I just blacked out from the fight and drinking.  I'm sorry to anyone my actions have hurt, I wish I could take everything back.

{¶15} Photographs of Pence show what appear to be minor injuries to various areas of his body. Photographs of his vehicle show that the back window and a small window on the rear driver's side were busted out, damage to the rear hatch, damage to the middle of the driver's door, which is heavily dented below the window, and a possible footprint on the driver's door.  They also show that when closed, the top half of the driver's door is not flush with the body of the vehicle.  The photographs show no obvious damage to the mirrors.  One of the partygoers testified that he punched a hole in a small back window on the car, and some evidence suggested this occurred before the stabbing.  Dalton testified that he punched out Pence's car windows after the stabbing.  Pence acknowledged that he broke the back window himself on a prior occasion.

E.  Jury Instructions, Verdict, and Sentencing

**{¶16}** The trial court denied Pence's request for jury instructions on provocation, involuntary manslaughter, aggravated assault, and voluntary manslaughter but granted his request for instructions on self-defense. The jury found Pence not guilty on Count One and guilty on the remaining counts.  Subsequently, the court granted Pence's Crim.R. 29 motion for judgment of acquittal on Count Five.  The court merged Counts Three and Four with Count Two. The court sentenced Pence to 15 years to life on Count Two and 36 months on Count Six to be served consecutively for an aggregate sentence of 18 years to life.

## II.  ASSIGNMENT OF ERROR

**{¶17}** Pence presents one assignment of error:  "The trial court errored [sic] when it failed to instruct the jury on provocation, aggravated assault, involuntary manslaughter and voluntary manslaughter."

## III.  LAW AND ANALYSIS

### A.  Legal Principles

**{¶18}** "'[A] trial court must fully and completely give jury instructions which are relevant and necessary in order for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. Woodfork*, 2025-Ohio-2786, ¶ 49 (4th Dist.), quoting *State v. Waugh*, 1994 WL 71228, *2 (4th Dist. Mar. 2, 1994), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus.  "When the indictment . . . charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."  R.C. 2945.74; *see also* Crim.R. 31(C).

Whether a particular offense should be submitted to the jury as a lesser-included offense or inferior-degree offense involves a two-tiered analysis. *See Woodfork* at ¶ 49-51.

**{¶19}** "'The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense[,]' or an inferior degree offense of the charged offense." *Id.* at ¶ 50, quoting *State v. Deanda*, 2013-Ohio-1722, ¶ 6, quoting *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987). An offense may be a lesser-included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *See State v. Evans*, 2009-Ohio-2974, ¶ 6, 9, 25, *clarifying State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph three of the syllabus. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *Deem* at paragraph two of the syllabus.

**{¶20}** "The second tier looks to the evidence in a particular case and determines whether '"a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense."'" *Deanda* at ¶ 6, quoting *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 2007-Ohio-2072, ¶ 11. "'The test used to determine whether to instruct a jury on an offense of inferior degree is the same test used to determine whether to instruct a jury on a lesser included offense.'" *Woodfork* at ¶ 50, citing *Waugh* at *2, citing *State v. Shane*, 63 Ohio St.3d 630, 632 (1992). "'The trial court has discretion in determining whether the record contains sufficient evidentiary support

to warrant a jury instruction on the lesser-included offense, and we will not reverse that determination absent an abuse of discretion.'" *Woodfork* at ¶ 51, quoting *State v. Blanton*, 2018-Ohio-1278, ¶ 64 (4th Dist.). "The law, the evidence presented, and the discretion of the trial judge play a role in whether lesser-included-offense instructions are appropriate. But the evidence is crucial[.]" *State v. Wine*, 2014-Ohio-3948, ¶ 21. "'[T]he trial court must view the evidence in the light most favorable to the defendant.'" *Id.*, quoting *State v. Monroe*, 2005-Ohio-2282, ¶ 37.

**{¶21}** "An instruction on a lesser included offense 'is not warranted every time "some evidence" is presented to support the lesser offense.'" *Woodfork*, 2025-Ohio-2786, at ¶ 52 (4th Dist.), quoting *State v. Trimble*, 2009-Ohio-2961, ¶ 192, citing *Shane* at 632. "'Rather, a court must find "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense."'" (Emphasis in *Shane*) *Id.*, quoting *Trimble* at ¶ 192, quoting *Shane* at 632-633. "The trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Wine* at ¶ 34. "To require an instruction to be given to the jury every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Shane* at 633.

B. Involuntary Manslaughter and Aggravated Assault

**{¶22}** Pence maintains that there was sufficient evidence of serious provocation to warrant jury instructions on involuntary manslaughter, as a lesser-included offense of

felony murder, and aggravated assault, as an inferior degree of felonious assault, serving as the predicate felony.  Pence was charged with felony murder under R.C. 2903.02(B), which states:  "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03 or 2903.04]."  The predicate felonies were felonious assault under R.C. 2903.11(A)(1) and (2), which state:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

{¶23}  R.C. 2903.04 addresses involuntary manslaughter, and division (A) states: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."  R.C. 2903.12 addresses aggravated assault, and division (A) states:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

Unlike felonious assault, which is at minimum a second-degree felony, R.C. 2903.11(D)(1)(a), aggravated assault is a third or fourth-degree felony, R.C. 2903.12(B), and therefore, can serve as a predicate offense for involuntary manslaughter under R.C. 2903.04(A) but not felony murder.

{¶24} Involuntary manslaughter is a lesser-included offense of felony murder. *Woodfork*, 2025-Ohio-2786, at ¶ 56 (4th Dist.). Moreover, aggravated assault is an inferior degree of felonious assault because "its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *Deem*, 40 Ohio St.3d at 210-211. Thus, we will proceed to the second tier of the analysis.

{¶25} "[I]n a trial for felonious assault, a trial court must give the jury an aggravated assault instruction if the defendant presents sufficient evidence of serious provocation such that a jury could both reasonably acquit the defendant of felonious assault and convict the defendant of aggravated assault." *State v. Jones*, 2018-Ohio-239, ¶ 12 (4th Dist.), citing *State v. Mack*, 82 Ohio St.3d 198, 200 (1998); *Deem* at 211; and *Shane*, 63 Ohio St.3d 630. The Supreme Court has stated:

> Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

*Deem* at paragraph five of the syllabus, approving *State v. Mabry*, 5 Ohio App.3d 13 (8th Dist. 1982), paragraph five of the syllabus.

{¶26} "Determining whether sufficient evidence of serious provocation exists so as to warrant an aggravated assault instruction involves an objective and subjective inquiry." *Jones* at ¶ 14, citing *Mack* at 201. "A court must (1) objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage, and (2) determine whether the defendant in the particular case actually was under the influence of sudden passion or in a sudden fit of rage." *Id.*, citing *Mack* at 201.

**{¶27}** "Under the objective part of the inquiry, provocation is reasonably sufficient to bring on a sudden passion or fit of rage if it would 'arouse the passions of an ordinary person beyond the power of his or her control.'" *Id.* at ¶ 15, quoting *Shane* at 635. "'If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give' an aggravated assault instruction." *State v. Fife*, 2021-Ohio-2000, ¶ 65 (10th Dist.), quoting *Shane* at 634.

**{¶28}** "If the evidence shows that the defendant was sufficiently provoked under the objective standard, the inquiry then shifts to whether the defendant actually was under the influence of sudden passion or a sudden fit of rage." *Jones*, 2018-Ohio-239, at ¶ 16 (4th Dist.), citing *Shane*, 63 Ohio St.3d at 634. "It is only at that point that the ' * * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * * ' must be considered." (Omissions in original.) *Shane* at 634, quoting *Deem*, 40 Ohio St.3d 205, at paragraph five of the syllabus. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Mack*, 82 Ohio St.3d at 201.

**{¶29}** The trial court did not abuse its discretion in denying Pence's request for jury instructions on involuntary manslaughter with aggravated assault as the predicate offense. Pence testified that Starner slammed the car door into him, and other evidence indicates that Starner pushed on the door while Pence was between it and the car. At least one appellate court has found sufficient evidence of provocation to warrant a jury instruction on aggravated assault where the defendant testified that the victim was inflicting excruciating pain on him and offered as corroborating evidence a medical report

describing injury to him.  *State v. McGranahan*, 1995 WL 334624, *2 (1st Dist. June 7, 1995).  But Pence did not testify that he felt any pain due to Starner's conduct, and no other evidence suggests he experienced pain that would arouse the passions of an ordinary person beyond the power of his or her control.  Pence did not attribute any of his injuries to Starner's conduct, and even if he had, his injuries appear to have been minor, and he does not appear to be in excruciating pain in the cell phone footage.  We also observe that Pence did not testify that Starner damaged the car, and Chapman's video footage does not show Starner engaging in any conduct which would have caused the door damage seen in the photographic evidence.  There is no indication that the alleged provocation of Starner slamming the car door into Pence would have aroused the passions of an ordinary person beyond the power of his or her control, so the alleged provocation was not reasonably sufficient to bring on a sudden passion or fit of rage.  *See generally State v. Stewart*, 2011-Ohio-466, ¶ 13 (10th Dist.) (appellant testified that he was pinned between door and car, and appellate court found this alleged provocation was not reasonably sufficient to bring on a sudden fit of rage because "there was no further indication that this circumstance would have aroused the passions of an ordinary person beyond the power of his or her control" and appellant's testimony regarding his pain level did not "support a finding that the pain was so extreme or excruciating" as to do so).

{¶30}  There is some evidence that Starner grabbed at Pence and tried to hit him in the face.  Pence testified to this effect, though he initially testified that he did not know who tried to attack him at the car.  On Chapman's video footage, Starner appears to briefly lift a hand up near Pence's right hand, which is by Pence's face, and Pence's hand moves a little.  In addition, there are two other instances when a hand briefly moves near Pence's

face. It is not clear that this hand belongs to Starner. But even if one could conclude from the footage that Starner was trying to grab and hit Pence during these incidents, such conduct would not arouse the passions of an ordinary person beyond the power of his or her control. "As a matter of law, hitting another person does not constitute sufficient provocation to bring about a sudden passion or fit of rage," *State v. Evans*, 2006-Ohio-2564, ¶ 64 (4th Dist.), and here, Starner did not even succeed in hitting Pence.

**{¶31}** The evidence, when viewed in a light most favorable to Pence, does not reasonably support both an acquittal on the charged offenses of felonious assault and felony murder and a conviction on aggravated assault and involuntary manslaughter. The record does not contain evidence of serious provocation by Starner that was reasonably sufficient to incite the use of deadly force. Accordingly, the trial court did not err when it failed to instruct the jury on aggravated assault, involuntary manslaughter, and provocation as it relates to those offenses.

### C. Voluntary Manslaughter

**{¶32}** Pence also maintains that there was sufficient evidence of serious provocation to warrant jury instructions on voluntary manslaughter as an inferior degree of murder. We presume his argument applies to only the felony-murder charge because he was acquitted of purposeful murder. So even if the trial court erred by not instructing the jury on voluntary manslaughter as an inferior degree of purposeful murder, such error was harmless in relation to that charge. *State v. Davis*, 2012-Ohio-1440, ¶ 22 (9th Dist.).

**{¶33}** Pence was charged with felony murder under R.C. 2903.02(B), which again, states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or

second degree and that is not a violation of [R.C. 2903.03 or 2903.04]."   The predicate

felonies were felonious assault under R.C. 2903.11(A)(1) and (2), which again, state:

> (A) No person shall knowingly do either of the following:

> (1) Cause serious physical harm to another or to another's unborn;

> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶34}** R.C. 2903.03(A) defines the offense of voluntary manslaughter and states:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

**{¶35}** Pence was not entitled to a voluntary manslaughter instruction in relation to

the felony-murder charge because voluntary manslaughter is not a lesser-included or

inferior-degree offense of felony murder via felonious assault. *Davis*, 2012-Ohio-1440, at

¶ 23 (9th Dist.).  Voluntary manslaughter "is not a lesser-included offense because felony

murder can be committed without voluntary manslaughter necessarily being committed."

*Id.*  "That is, one could cause the death of another as a proximate result of committing

felonious assault without having been provoked."   *Id.*  "Voluntary manslaughter is not an

inferior-degree offense to felony murder via felonious assault because its elements,

except for the mitigating factor of rage provoked by the victim, are neither contained within

nor identical to the elements of felony murder via felonious assault."   *Id.*   "That is,

'knowingly caus[ing] the death of another' is not contained within or identical to

proximately causing the death of another by 'knowingly ... caus[ing] serious physical

harm' to him or by 'caus[ing] or attempting to cause physical harm ... by means of a deadly

weapon[.]'"  (Bracketed text in original.)  *Id.*, citing R.C. 2903.02(B), R.C. 2903.03(A), and R.C. 2903.11(A).

**{¶36}**  Pence's reliance on *State v. Tyler*, 50 Ohio St.3d 24 (1990), is misplaced. *Tyler* addressed whether voluntary manslaughter is an inferior degree of aggravated murder under R.C. 2903.01(B).  *See Tyler* at 36-37.  *Tyler* did not and could not have addressed whether voluntary manslaughter is an inferior degree of felony murder under R.C. 2903.02(B) because *Tyler* was decided in 1990, and felony murder was not a crime in Ohio "until 1998, when division (B) was added to R.C. 2903.02."  *State ex rel. Williams v. Sutula*, 2016-Ohio-7453, ¶ 4, citing Sub.H.B. No. 5, 147 Ohio Laws, Part I, 175, 176.

**{¶37}**  Therefore, we conclude the trial court did not err when it failed to instruct the jury on voluntary manslaughter and on provocation as it relates to that offense.

### D.  Conclusion

**{¶38}**  The trial court did not err when it failed to instruct the jury on provocation, aggravated assault, involuntary manslaughter and voluntary manslaughter.  Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

                                                                        JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**